IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-HC-2168-D

| | |
|---|---|
| RODEGUISE CALHOUN, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>ALVIN W. KELLER, )<br>)<br>Respondent. ) | **ORDER** |

Rodeguise Calhoun, a state inmate, petitions the court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On June 15, 2011, respondent answered the petition [D.E. 6] and filed a motion for summary judgment [D.E. 7]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Calhoun about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 9]. Calhoun did not file any response in opposition to the motion, and the time within which to do so has expired. As explained below, respondent's motion for summary judgment [D.E. 7] is granted.

I.

The North Carolina Court of Appeals summarized the facts of this case as follows:

> There is no dispute that Kayla Samuels ("decedent") was shot and killed by a single .44 caliber bullet on 25 April 2002. There is also no dispute that defendant and Deshune "Worm" Bennett ("Bennett") were present when decedent was shot. The State presented evidence tending to show that defendant was the shooter, while defendant presented evidence indicating that Bennett was the shooter. The lone eyewitness to the shooting was decedent, who indicated that defendant and Bennett had shot him. Both defendant and Bennett were seen fleeing the scene.
>
> The State's evidence tended to show that Esther Williams ("Williams") returned to her home and found defendant and Bennett inside. Williams told the two men that she was going to leave her house to shop, and they should leave before she returned

home again. Williams also testified that she saw decedent next door to her home.

Albert Jones ("Jones"), a neighbor of Williams's, saw decedent walk into Williams's home. Later, Jones heard a gunshot from the Williams residence and saw defendant standing near a window in the same residence. Defendant noticed Jones and waved a gun at him, signaling Jones to move away from the back of the house. Jones complied, retrieved a shotgun, and waited for someone to come out of the Williams's home.

Defendant ran out of the home first, with something wrapped in his hand and his face covered. Bennett followed, with papers in his hands like "he had been in [decedent's] pocket[.]" At this point, Jones fired his shotgun, hitting Bennett.

At approximately 7:00 p.m., Officer Lee Hartman responded to a call concerning shots fired in the vicinity of Williams's home. Both Officer Hartman and Williams arrived at her home at the same time. Williams and Hartman entered the home, finding decedent motionless on the living room floor. Williams asked decedent who had shot him, and decedent told her that it was "Chico" and "Worm." Williams asked decedent to squeeze her hand to confirm that "Chico" and "Worm" were the shooters, and decedent did so. Officer Hartman witnessed and recorded the identification. Williams later identified defendant as "Chico" and Deshune Bennett as "Worm" from photographs at the Raleigh Police Department.

On 26 April 2002, the police stopped a taxi in which Bennett was a passenger. Bennett was carrying $853.00 in his front pocket and some loose cash in another pocket. A box of .44 caliber ammunition was taken from the waistband of another passenger. The box of ammunition was designed to hold twenty bullets but contained only eighteen.

Defendant testified that Bennett was the shooter and that it was accidental. He also testified that he fled because he panicked after realizing that decedent had been shot, and heard more shots while fleeing. The day after the shooting, defendant learned that the police were investigating him as a possible suspect, so he turned himself in.

State v. Calhoun, 189 N.C. App. 166, 167–68, 657 S.E.2d 424, 425–26 (2008).

On May 25, 2006, a jury convicted Calhoun of first-degree murder, and the court sentenced Calhoun to life imprisonment without parole. Id. at 166, 657 S.E.2d at 425. Calhoun appealed. On March 4, 2008, the North Carolina Court of Appeals found no prejudicial error. Id. at 172, 657 S.E.2d at 428. On August 26, 2008, the Supreme Court of North Carolina denied review. State v.

Calhoun, 666 S.E.2d 651 (N.C. 2008). Calhoun states that he filed a petition for certiorari in the United States Supreme Court, but that the clerk "rejected" the filing. Pet. 13. On June 11, 2009, Calhoun filed a pro se motion for appropriate relief ("MAR") in the Superior Court of North Carolina, Wake County, which that court denied on August 4, 2009. Pet. 4. On January 13, 2010, Calhoun filed a pro se certiorari petition in the North Carolina Court of Appeals, which that court denied on January 28, 2010. Id. 5, 7; Mot. Summ. J., Exs. 11, 13 (petition for certiorari and order denying petition).

On July 27, 2010, Calhoun signed his section 2254 petition. Pet. 15. Calhoun asserts three grounds for relief: (1) "lack of jurisdiction" due to variances between the indictment and the jury instructions; (2) denial of the right of confrontation; and (3) ineffective assistance of counsel. Id. 16–18. Calhoun raised ground two on direct appeal, and grounds one[1] and three in his MAR. Id.

II.

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a

---

[1] Although Calhoun states that he raised ground one on direct appeal and "the state's courts ... unreasonably refused to consider it[,]" Pet. 6, 16, the court agrees with respondent that Calhoun did not raise the claim on direct appeal. See Mem. Supp. Mot. Summ. J. 10–11; Exs. 4, 6 (briefs filed by petitioner on direct appeal).

3

genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state-court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state-court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, No. 11-74, 2011 WL 6141312, at *3–4 (U.S. Dec. 12, 2011) (per curiam); Bobby v. Dixon, No. 10-1540, 2011 WL 5299458, at *4–5 (U.S. Nov. 7, 2011) (per curiam); Cavazos v. Smith, No. 10-1115, 2011 WL 5118826, at *3–5 (U.S. Oct. 31, 2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively

> reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. Stated succinctly, in order to prevail, a petitioner must show that "there was no reasonable basis to deny relief." Id. at 784; DeCastro v. Branker, 642 F.3d 442, 449–50 (4th Cir. 2011), cert. denied, No. 11-6640, 2011 WL 4528510 (U.S. Dec. 5, 2011).

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of any claim that the state court found to be procedurally barred based on independent and adequate state grounds. See, e.g., Dretke v. Haley, 541 U.S. 386, 392 (2004); Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003). The doctrine also applies "when a state court . . . discusses the claim on its merits, e.g., in conducting a plain error review having found a procedural default." Daniels, 316 F.3d at 487. A state rule is "adequate" if it is firmly established and consistently applied by the state court. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). A state rule is "independent" if it does not depend upon a federal constitutional ruling. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

However, a federal court may review a procedurally-defaulted claim if the petitioner demonstrates cause and prejudice resulting from the alleged violation of federal law, or if the

5

petitioner shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). A petitioner shows cause by establishing that something external to him prevented him from complying with the state procedural rule. Id. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See, e.g., United States v. Frady, 456 U.S. 152, 167–68 (1982).

A.

Respondent first contends that Greene's petition is untimely. Mem. Supp. Mot. Summ. J. 3–14. Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a person in custody pursuant to the judgment of a state court must file any petition for a writ of habeas corpus within one year. See 28 U.S.C. § 2244(d)(1). The limitation period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." Id. § 2244(d)(1)(A).

The limitation period under section 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). An application for post-conviction or other collateral review is "pending" from initial filing in the state courts until final disposition in the state courts. Taylor, 186 F.3d at 560–61. The period between the time a petitioner's conviction becomes final and the time that a petitioner files a state application for post-conviction relief counts against the one-year period of limitation. See, e.g., Hernandez v. Caldwell, 225 F.3d 435, 438 (4th Cir. 2000); Harris v. Hutchinson, 209 F.3d 325, 327 (4th Cir. 2000); Flanagan v. Johnson, 154 F.3d 196, 199 n.1 (5th Cir. 1998). The statutory period

6

then resumes after the state court of appeals denies a petitioner's certiorari petition. See, e.g., Hernandez, 225 F.3d at 438.

Initially, the court must determine when Calhoun's conviction became final. See 28 U.S.C. § 2244(d)(1)(A). Respondent contends Calhoun's conviction became final no later than December 2, 2008, 90 days after the Supreme Court of North Carolina affirmed his conviction. Mem. Supp. Mot. Summ. J. 3-4; see, e.g., Clay v. United States, 537 U.S. 522, 527 (2003). Thus respondent argues that, Calhoun's one-year period of limitations began to run on December 2, 2008, and ran for 191 days until Calhoun filed his MAR on June 11, 2009. See, e.g., Minter v. Beck, 230 F.3d 663, 665–66 (4th Cir. 2000).

Respondent further contends that Calhoun's one-year period of limitations then tolled while the state courts adjudicated his MAR and resumed on January 28, 2010 when the Court of Appeals of North Carolina denied certiorari. Mem. Supp. Mot. Summ. J. 5–6. The limitation period under section 2244(d)(1) is tolled during the time "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); see Taylor v. Lee, 186 F.3d 557, 560 (4th Cir. 1999). An application for post-conviction or other collateral review is "pending" from initial filing in the state courts until final disposition in the state courts. Taylor, 186 F.3d at 560–61. Respondent asserts that Calhoun then had 174 days from January 28, 2010, until July 21, 2010 to file this petition. Mem. Supp. Mot. Summ. J. 6. Calhoun did not sign his petition until July 27, 2010. Pet. 15. Therefore, respondent claims Calhoun's petition was untimely by 33 days.

As noted, Calhoun states he attempted to file a petition in the United States Supreme Court, but that the Clerk of that court "rejected" the filing. Pet. 13. In light of this ambiguity in the record,

which respondent does not address, the court assumes, without deciding, that Calhoun's petition was timely filed. Timeliness is not a jurisdictional prerequisite under the AEDPA. See Holland v. Florida, 130 S. Ct. 2549, 2560 (2010); Day v. McDonough, 547 U.S. 198, 205 (2006); Simms v. Acevedo, 595 F.3d 774, 779 (7th Cir. 2010); Diaz v. Kelly, 515 F.3d 149, 153 (2d Cir. 2008); Trussell v. Bowersox, 447 F.3d 588, 590 (8th Cir. 2006).

B.

In his first claim, Calhoun asserts "lack of jurisdiction" in that he was indicted on a charge of second-degree murder and presented at trial a "defense . . . that the shooting was accidental[,]" but the trial court "subsequently instructed the jury on robbery and 'acting in concert,' although petitioner was not charged with any robbery, and . . . . did not charge an accident, leaving petitioner with no defense to the allegation in the charging instrument." Pet. 16. Calhoun further asserts that he "was convicted of the uncharged offense of first degree murder." Id. As noted, Calhoun did not raise this argument on direct appeal; however he did raise it in his MAR. The superior court summarily denied this claim as procedurally barred. Mot. Summ. J. Ex. 10 (August 4, 2009 order denying MAR). Respondent's evidence shows that Calhoun was indicted with a "'short-form' murder indictment." Mem. Supp. Mot. Summ. J. 12; Mot. Summ. J. Ex. 3 (indictment).

A "constructive amendment" of an indictment occurs "'[w]hen the government, through its presentation of evidence or its argument, or the district court, through its instructions to the jury, or both, broadens the bases for conviction beyond those charged in the indictment[.]'" United States v. Ashley, 606 F.3d 135, 141 (4th Cir. 2010) (quoting United States v. Malloy, 568 F.3d 166, 178 (4th Cir. 2009), cert. denied 131 S. Ct. 428 (2010)). "A constructive amendment is a fatal variance because the indictment is altered 'to change the elements of the offense charged, such that the

8

defendant is actually convicted of a crime other than that charged in the indictment.'" United States v. Randall, 171 F.3d 195, 203 (4th Cir. 1999) (quoting United States v. Schnabel, 939 F.2d 197, 203 (4th Cir. 1991)). Any other variance "does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." Ashley, 606 F.3d at 141 (quotations and citation omitted). Moreover, "variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford v. Edwards, 780 F.2d 405, 407 (4th Cir. 1985).

Calhoun has not shown that the trial court's jury instructions impermissibly broadened the basis for his first-degree murder conviction. Calhoun's conclusory assertions fail to demonstrate that the alleged variance surprised him or hindered his defense in any way, or that he now faces a risk of being convicted for robbing Samuels in addition to murdering him. Likewise, Calhoun has not shown a deprivation of due process. Accordingly, Calhoun has failed to show that the superior court's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, and this claim fails. See 28 U.S.C. § 2254(d)–(e).

To the extent Calhoun challenges the use of the short-form murder indictment, the Supreme Court of North Carolina "has consistently held that indictments for murder based on the short-form indictment statute are in compliance with both the North Carolina and United States Constitutions . . . . [, and] that the short-form indictment is sufficient to charge first-degree murder on the basis of any of the theories, including premeditation and deliberation, set forth in N.C.G.S. § 14-17, which is referenced on the short-form indictment." State v. Braxton, 352 N.C. 158, 174, 531 S.E.2d 428,

9

437 (2000) (citations omitted); see State v. Squires, 357 N.C. 529, 537, 591 S.E.2d 837, 842 (2003). Calhoun has not shown that the superior court's ruling on this issue reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See Stroud v. Polk, 466 F.3d 291, 295 (4th Cir. 2006); Allen v. Lee, 366 F.3d 319, 323–24 (4th Cir. 2004) (en banc) (per curiam); Hartman v. Lee, 283 F.3d 190, 198–99 (4th Cir. 2002). Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

C.

Next, Calhoun asserts he was denied the right of confrontation, based on the trial court's admission of the victim's out-of-court statements into evidence. Calhoun raised this issue on direct appeal (in a claim of ineffective assistance of counsel), and the Court of Appeals of North Carolina rejected it, holding:

> Defendant next argues that he received ineffective assistance of counsel because his trial counsel failed to raise a Confrontation Clause argument to the trial court. We disagree.
>
> The Sixth Amendment of the United States Constitution guarantees an accused a right to counsel in criminal prosecutions. Strickland v. Washington, 466 U.S. 668, 685 (1984). This right to counsel includes the right to the effective assistance of counsel. State v. Grooms, 353 N.C. 50, 64 (2000) (citing McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). In order to establish that trial counsel was ineffective, defendant must show: (1) that his counsel's performance was deficient under the circumstances of the case; and (2) that he suffered prejudice from the inadequate representation. Strickland, 466 U.S. at 700.
>
> In the instant case, defendant argues that he was prejudiced by his counsel's failure to assert a Confrontation Clause objection to the testimony regarding the identity of the alleged shooters. Because we find that there was no Confrontation Clause violation in this case, even were defense counsel to have objected, defendant is unable to establish deficient performance, much less prejudice.

The Confrontation Clause of the Sixth Amendment guarantees "[i]n all criminal prosecutions [that] the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend. VI; see also N.C. Const. art. I, § 23 ("every person charged with [a] crime has the right to . . . confront the accusers and witnesses with other testimony"). This amendment applies to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965).

The Confrontation Clause is violated when a "testimonial" statement from an unavailable witness is introduced against a defendant who did not have a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 68 (2004) ("[w]here testimonial evidence is at issue . . . , the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination"). The rule in Crawford is not absolute, however, as the Court left open the possibility that testimonial statements from unavailable witnesses may still be admitted if they would have constituted a common law exception to the right of confrontation. Among the possible "special exceptions" are the so-called "dying declarations." Id. at 56, n.6. Accordingly, in this case, the admission of the testimony will not be error if: (1) the statements were non-testimonial; and/or (2) the "dying declaration" constitutes a special exception. We address each issue in turn.

A.

Testimonial statements include prior testimony and statements taken by police officers during the course of interrogations. Id. at 68. In the instant case, decedent's statement was not prior testimony or made to a police officer during the course of an interrogation. Instead, the statement was made to Williams, a private citizen. Thus, the Sixth Amendment is not implicated as the statements were non-testimonial.

Moreover, even if the statements were made to a police officer, the United States Supreme Court has held that "[s]tatements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, 547 U.S. 813, 827 (2006). Among the acceptable purposes of the interrogation is to "establish the identity of the assailant, so that the dispatched officers might know whether they would be encountering a violent felon." Id. at 827. There being such an emergency here, we hold that decedent's statements were non-testimonial on this ground as well. Accordingly, defendant is unable to establish that he was prejudiced by his defense counsel's failure to object on Confrontation Clause grounds as he would not have prevailed on that objection. Defendant's assignment of error as to this issue is therefore rejected.

B.

We pause now to address in the alternative whether a dying declaration constituted a "special exception" to an accused's right to confront witnesses when the

11

Sixth Amendment was adopted. After careful consideration, we conclude that it was and hold that dying declarations are not violative of the Sixth Amendment.

The first court to address the issue, which was left open by the Supreme Court in Crawford, was the California Supreme Court. See People v. Monterroso, 34 Cal.4th 743, 22 Cal. Rptr.3d 1, 101 P.3d 956 (2004). That court held that "the common law pedigree of the exception for dying declarations poses no conflict with the Sixth Amendment." Id. at 972. The Monterroso court reasoned that, under Crawford, "the confrontation clause 'is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding[.]'" Id. (quoting Crawford). Accordingly, the court then reviewed the history of the dying declaration and determined that "[d]ying declarations were admissible at common law in felony cases, even when the defendant was not present at the time the statement was taken." Id. (citing T. Peake, Evidence (3d ed. 1808) p. 64.)

> In particular, the common law allowed "'the declaration of the deceased, after the mortal blow, as to the fact itself, and the party by whom it was committed,'" provided that "'the deceased at the time of making such declarations was conscious of his danger.'" (King v. Reason (K.B.1722) 16 How. St. Tr. 1, 24-25.) To exclude such evidence as violative of the right to confrontation "would not only be contrary to all the precedents in England and here, acquiesced in long since the adoption of these constitutional provisions, but it would be abhorrent to that sense of justice and regard for individual security and public safety which its exclusion in some cases would inevitably set at naught. But dying declarations, made under certain circumstances, were admissible at common law, and that common law was not repudiated by our constitution in the clause referred to, but adopted and cherished." (State v. Houser (Mo.1858) 26 Mo. 431, 438; accord, Mattox v. United States, 156 U.S. 237, 243-244 [, 15 S. Ct. 337, 39 L.Ed. 409 (1895)] ["from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility"].)

Id.

Other states have decided the issue and have also ruled that dying declarations serve as a common law exception to the right of confrontation and thus do not violate the Sixth Amendment. See, e.g., People v. Taylor, 275 Mich. App. 177, 737 N.W.2d 790, 794 (2007); Harkins v. Nevada, 122 Nev. 974, 143 P.3d 706, 711 (2006); People v. Gilmore, 356 Ill. App. 3d 1023, 293 Ill. Dec. 323, 828 N.E.2d 293, 302-03 (2005); State v. Martin, 695 N.W.2d 578, 585-86 (Minn. 2005); State v. Manuel, 275 Wis.2d 146, 685 N.W.2d 525, 532 (2004). There is not, however, complete agreement.

12

A federal district court held that dying declarations are violative of the Sixth Amendment because the statements are (1) unreliable and even if they were reliable, such is not a relevant consideration; and (2) were not admissible at the time of the drafting of the Sixth Amendment. United States v. Jordan, 66 Fed. R. Evid. Serv. (Callaghan) 790 (D. Colo. 2005). The Illinois Court of Appeals disagreed with the reasoning of the Colorado District Court, stating that:

> We believe that the reasoning of Monterroso represents the sensible approach and choose to follow it instead of Jordan. Crawford provided an in-depth discussion of the right of confrontation as it existed at the time the sixth amendment was ratified and offered a strong statement regarding . . . the admissibility of dying declarations. Considering the Supreme Court's guidance on the issue, we are reluctant to expand that right beyond the historical parameters indicated in Crawford.

Gilmore, 293 Ill. Dec. 323, 828 N.E.2d at 302.

> We agree with the Gilmore court's reasoning rejecting Jordan and follow the majority of states that have decided this issue and hold that a dying declaration is a "special exception" under Crawford to the Sixth Amendment right to confrontation. Defendant's assignments of error as to this issue are therefore rejected.

Calhoun, 189 N.C. App. at 168–72, 657 S.E.2d at 426–28. Calhoun has failed to show that the Court of Appeals's rejection of this claim was contrary to or an unreasonable application of clearly established federal law, and this claim fails. See 28 U.S.C. § 2254(d)-(e); Sharpe, 593 F.3d at 378; Taylor v. Prelesnik, No. 09-cv-14214, 2011 WL 4694055, at *3 (E.D. Mich. Oct. 5, 2011) ("Since Crawford did not clearly foreclose a dying declaration exception, AEDPA provides Taylor no relief on this point." (collecting cases)).

D.

Finally, Calhoun asserts a claim of ineffective assistance of counsel. Pet. 18. Specifically, Calhoun challenges his attorney's decision to withdraw any request for a jury instruction "on accident and inadvertence . . . , thereby abandoning the defense he raised in opening statement, proved during the presentation of the evidence, and argued in closing." Id. Calhoun also challenges

13

his attorney's failure to object to jury instructions on acting in concert and first-degree murder. Id. Calhoun did not raise these assertions on direct appeal, but he did raise them in his MAR. Calhoun also argues that his attorney committed "other objectively unreasonable errors and omissions" by objecting to the admission of certain "hearsay evidence" (presumably the victim's statements) on "only common law and statutory grounds" rather than on constitutional grounds. Id. Calhoun raised this argument on direct appeal, and the North Carolina Court of Appeals rejected it as noted. However, Calhoun did not assert the claim in his petition for discretionary review to the Supreme Court of North Carolina. Mot. Summ. J., Ex. 7 (notice of appeal). Finally, Calhoun argues that his attorney was ineffective for failing to object to the testimony of a witness who testified that he was "the 'shooter[.]'" Pet. 18. Calhoun did not raise this claim on direct appeal but he did assert it in his MAR.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel at both the trial and appellate levels. See, e.g., Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel at the trial level, a habeas petitioner must establish two things. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. See, e.g., Van Hook, 130 S. Ct. at 16; Strickland, 466 U.S. at 687–91. In considering this element, a reviewing court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.; Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). Second, a petitioner must show that there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding

would have been different. Strickland, 466 U.S. at 694. A petitioner bears the burden of proving both deficient performance and prejudice. Id. at 687.

Respondent argues that Calhoun's claim is procedurally defaulted. Mem. Supp. Mot. Summ. J. 23. A prisoner is required to exhaust the remedies available to him in state court before he files a writ of habeas corpus in federal court. 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement of section 2254 demands that state prisoners give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). This "one full opportunity" includes filing petitions for discretionary review with the state supreme court when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy the exhaustion requirement of section 2254 by directly appealing his conviction to the Court of Appeals of North Carolina and then petitioning the Supreme Court of North Carolina for discretionary review, or by filing a motion for appropriate relief and petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. Gen. Stat. §§ 7A-31, 15A-1422.

As noted, Calhoun raised one part of this claim on direct appeal to the North Carolina Court of Appeals, but did not include it in his petition for discretionary review with the Supreme Court of North Carolina and thus did not exhaust his claims through the direct review process.[2] See O'Sullivan, 526 U.S. at 845. Therefore, the North Carolina courts have not had "one full opportunity

---

[2] To the extent Calhoun asserts ineffective assistance of appellate counsel for failing to include the claims in his petition for discretionary review as a cause for his failure to exhaust, the contention fails. A defendant has no constitutional right to counsel when seeking discretionary review of a conviction in a state appellate court. See, e.g., Wainwright v. Torna, 455 U.S. 586, 587–88 (1982) (per curiam); Ross v. Moffitt, 417 U.S. 600, 610–12 (1974). Consequently, a claim of ineffective assistance of counsel for failing to file a petition for discretionary review cannot constitute "cause" for procedural default. See, e.g., Coleman, 501 U.S. at 752–53.

15

to resolve [these] constitutional issues." Id. Furthermore, if Calhoun were to return to state court and attempt to raise this claim through a motion for appropriate relief, it would be procedurally barred pursuant to N.C. Gen. Stat. § 15A-1419(a)(3). As for the assertions Calhoun raised only in his MAR rather than on direct appeal, a claim that a criminal defendant fails to raise on direct appellate review is procedurally defaulted. See N.C. Gen. Stat. § 15A-1419. The procedural-default rule of section 15A-1419 is an adequate and independent state ground precluding habeas review. See, e.g., Sharpe 593 F.3d at 377; Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998). Because Calhoun failed to preserve this issue under North Carolina law, it is procedurally barred. See, e.g., Woodford v. Ngo, 548 U.S. 81, 92 (2006); Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). Thus, Calhoun has procedurally defaulted this claim.

Alternatively, Calhoun has not shown that the Court of Appeals of North Carolina or the superior court reached a result contrary to, or unreasonably applied clearly established federal law in considering these issues. Likewise, the state courts' rulings were not based on an unreasonable determination of facts, in light of the evidence presented in Calhoun's state trial. See 28 U.S.C. § 2254(d)–(e). Thus, this claim fails.

### III.

In sum, the court GRANTS respondent's motion for summary judgment [D.E. 7], and DISMISSES Calhoun's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c). The Clerk of Court shall close this case.

SO ORDERED. This 14 day of December 2011.

JAMES C. DEVER III
Chief United States District Judge

16